**PUBLIC DOCUMENT**

2026-1566

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

SAHA THAI STEEL PIPE PUBLIC COMPANY LTD.,
*Plaintiff-Appellee,*

v.

WHEATLAND TUBE COMPANY,
*Defendant-Appellant,*

UNITED STATES
*Defendant*

Appeal from the U.S. Court of International Trade
Case No. 1:21-cv-00049
Judge Gary S. Katzmann

# REPLY BRIEF OF DEFENDANT-APPELLANT WHEATLAND TUBE COMPANY

*Submitted by*
Roger B. Schagrin
Luke A. Meisner
SCHAGRIN ASSOCIATES
900 Seventh Street NW; Suite 500
Washington, DC 20001
202-223-1700
lmeisner@schagrinassociates.com
*Counsel for Wheatland Tube Company*

Dated: August 3, 2026

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 26-1566

**Short Case Caption** Saha Thai Steel Pipe Public Company Limited v. US

**Filing Party/Entity** Wheatland Tube Company

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/03/2026

Signature: /s/ Luke A. Meisner

Name: Luke A. Meisner

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Wheatland Tube Company | | Zekelman Industries, not publicly traded |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Michelle Avrutin, formerly of Schagrin Associates | Paul Jameson, , formerly of Schagrin Associates | |
| Benjamin Bay, , formerly of Schagrin Associates | Joseph Laroski, , formerly of Schagrin Associates | |
| Geert M. De Prest, , formerly of Schagrin Associates | Kelsy Rule, , formerly of Schagrin Associates | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii
SUMMARY OF ARGUMENT ........ 1

I. *Tung Mung* Does Not Foreclose Appeal of the CIT's Remand Order ........ 4
A. The Holding in *Tung Mung* Was Always Narrow and Was Further Narrowed by Subsequent Federal Circuit Decisions ..... 5
B. *Tung Mung* Does Not Apply to the CIT's Misapplication of the Exhaustion Doctrine ........ 9
C. *Tung Mung* Does Not Apply to Commerce's Application of § 1677m(d) ........ 10

II. The CIT Erred by Failing to Require Saha Thai to Exhaust Its Administrative Remedies ........ 12

III. On the Merits, the CIT Erred in Finding that Commerce Ran Afoul of § 1677m(d) ........ 18
A. The CIT Could Not Recast Intentional Withholding as a Questionnaire Misunderstanding ........ 19
B. Saha Thai Has Failed to Distinguish *Papierfabrik* ........ 22
C. *Hitachi Energy* and *Shelter Forest* Are Not on Point ........ 23
D. Commerce Did Comply with § 1677m(d) ........ 24

IV. Further Remand of This Case Is Not Precluded ........ 25

V. Commerce's *Remand Results* Are Also Unsupported by Substantial Evidence ........ 26

VI. Conclusion ........ 28

FORM 19: CERTIFICATE OF COMPLIANCE

FORM 30: CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

CASES

*Altx, Inc. v. United States*, 370 F.3d 1108 (Fed. Cir. 2004) .............................. 7
*Blue Pipe Steel Ctr. Co. v. United States*, No. 21-00081, 2025 WL 2731541 (Ct. Int'l Trade Sept. 25, 2025) .................................................................. 27
*Boomerang Tube LLC v. United States*, 856 F.3d 908 (Fed. Cir. 2017)...... 2, 14
*Corus Staal BV v. United States*, 502 F.3d 1370 (Fed. Cir. 2007) .................. 17
*Dorbest Ltd. v. United States*, 604 F.3d 1363 (Fed. Cir. 2010)................ 8, 9, 12
*Essar Steel Ltd. v. United States*, 678 F.3d 1268 (Fed. Cir. 2012).................. 25
*Goodluck India Ltd. v. United States,* 11 F.4th 1335 (Fed. Cir. 2021) ........... 20
*Hitachi Energy USA Inc. v. United States*, 34 F.4th 1375 (Fed. Cir. 2022) .. 23
*Linyi Chengen Imp. & Exp. Co. v. United States*, 174 F.4th 1351 (Fed. Cir. 2026) ........................................................................................................ 25
*McCarthy v. Madigan,* 503 U.S. 140, 112 S.Ct. 1081 L.Ed.2d 291 (1992)...... 17
*Nippon Steel Corp. v. Int'l Trade Comm'n*, 345 F.3d 1379, 1381 (Fed. Cir. 2003) ........................................................................................................ 19
*Nippon Steel Corp. v. U.S. Int'l Trade Comm'n*, 494 F.3d 1371 (Fed. Cir. 2007) ..................................................................................................... 7, 9
*Papierfabrik Aug. Koehler SE v. United States*, 843 F.3d 1373, 1376 (Fed. Cir. 2016)........................................................................ 1, 19, 22, 24
*Saha Thai Steel Pipe Pub. Co. Ltd. v. United States*, 101 F.4th 1310 (Fed. Cir. 2024) ........................................................................................................ 27
*Saha Thai Steel Pipe Public Company, Ltd. v. United States*, No. 21-00049, Slip Op. 26-9 (Ct. Int'l Trade Feb. 4, 2026) .................................................... 1
*Shelter Forest Int'l Acquisition, Inc. v. United States,* No. 2021-2281, 2022 WL 2155965 (Fed. Cir. June 15, 2022)................................................ 23, 24
*SKF USA Inc. v. United States*, 630 F.3d 1365 (Fed. Cir. 2011)..................... 21
*Tung Mung Development Co. v. United States*, 354 F.3d 1371 (Fed. Cir. 2004) ...................................................................................................passim
*Zenith Elecs. Corp. v. United States*, 99 F.3d 1576 (Fed. Cir. 1996)............... 20

STATUTES

19 U.S.C. § 1677b(a)(2) ........................................................................... 16
19 U.S.C. § 1677e(a)................................................................................. 26
19 U.S.C. § 1677m(d) ...........................................................................passim

In accordance with Federal Rule of Appellate Procedure 28 and Federal Circuit Rule 28, Defendant-Appellant Wheatland Tube Company ("Wheatland") respectfully submits this reply brief in support of its appeal of the final judgment of the U.S. Court of International Trade ("CIT") in *Saha Thai Steel Pipe Public Company, Ltd. v. United States*, No. 21-00049, Slip Op. 26-9 (Ct. Int'l Trade Feb. 4, 2026), Appx1, Appx2-22.

## SUMMARY OF ARGUMENT

Saha Thai's response brief, which relies heavily on *Tung Mung Development Co. v. United States*, 354 F.3d 1371 (Fed. Cir. 2004), depends on a procedural fiction: that the *Remand Results* issued by the U.S. Department of Commerce ("Commerce") were an independent agency judgment that erased the CIT's legal errors. They were not. Commerce acted only after the CIT excused Saha Thai's failure to exhaust and foreclosed Commerce from applying the rule in *Papierfabrik Aug. Koehler SE v. United States*, 843 F.3d 1373, 1376 (Fed. Cir. 2016) to Saha Thai's intentional withholding of relevant sales information. *Tung Mung* protects true independent agency judgment, but it does not launder judicial error through a compelled remand.

Nor does *Tung Mung* bar review of the CIT's exhaustion ruling because Commerce never made any independent agency decision on exhaustion in its *Remand Results*. Saha Thai's *Tung Mung* argument focuses on Commerce's decision to reopen the record and recalculate the dumping margin, but it does

not address the separate legal error that the CIT made when it excused Saha Thai's failure to raise its 19 U.S.C. § 1677m(d) argument before Commerce. Once the CIT held that exhaustion did not apply, Commerce was bound by that ruling and had no occasion—or authority—to reconsider whether Saha Thai could have raised the issue in its rebuttal brief. Applying *Tung Mung* in this context would effectively make CIT exhaustion rulings unreviewable whenever the case is remanded, because the agency can never independently revisit that judicial ruling on remand.

Saha Thai fails to defend the CIT's decision to excuse its failure to exhaust its § 1677m(d) argument before Commerce. Wheatland's administrative case brief squarely argued that Saha Thai's U.S. sales database was incomplete, that Saha Thai had failed to report its dual-stenciled pipe sales, and that Commerce should apply total adverse facts available ("AFA") on that basis. Under *Boomerang Tube LLC v. United States*, 856 F.3d 908 (Fed. Cir. 2017), that placed Saha Thai on notice that it needed to raise any responsive objection—including any argument that Commerce could not apply AFA without first providing § 1677m(d) notice—in its rebuttal brief before the agency. Saha Thai's contrary argument confuses statutory notice with exhaustion: Wheatland's case brief did not need to satisfy Commerce's statutory notice obligation; it only needed to put Saha

Thai on notice that the AFA issue was before Commerce. Nor can Saha Thai avoid exhaustion by recasting § 1677m(d) as an unqualified statutory duty or a pure question of law, because parties must exhaust statutory objections, and the applicability of § 1677m(d) here turned on fact-bound questions about Saha Thai's conduct, Commerce's questionnaires, and whether the omission reflected intentional misconduct. By allowing Saha Thai to raise this argument for the first time in court, the CIT deprived Commerce of the opportunity to address the issue in the first instance, and that abuse of discretion independently requires reversal.

On the merits, Saha Thai cannot justify the CIT's holding that Commerce violated § 1677m(d). *Papierfabrik* controls because the statute does not require Commerce to treat intentionally incomplete reporting as a curable "deficiency." The CIT avoided *Papierfabrik* only by making its own factual finding that Saha Thai's conduct was a mere misunderstanding rather than intentional misconduct, but that was not the CIT's role. At most, the CIT should have remanded for Commerce to address intent in the first instance. In any event, the record supports a finding of intentional misconduct: immediately after Saha Thai's dumping margin increased, Saha Thai shifted sales of pipe destined for its U.S. customers through Blue Pipe, failed to report those sales, and described the omitted merchandise as "line

pipe" even though the key issue was that the pipe was dual-stenciled and therefore certified to standard-pipe specifications. Saha Thai's attempt to distinguish *Papierfabrik* on the basis that it has never admitted wrongdoing elevates form over substance. The relevant issue is intentional withholding, not confession. Thus, the CIT erred in requiring Commerce to provide Saha Thai a further opportunity to cure its intentional omission before applying AFA.

Nor does the later completion of the record defeat AFA. A respondent cannot intentionally withhold sales data, obtain a court-ordered second chance, and then argue that its belated compliance eliminates the statutory predicate for adverse inferences. That is precisely the incentive *Papierfabrik* rejected.

## I. *Tung Mung* Does Not Foreclose Appeal of the CIT's Remand Order

In its opening brief, Wheatland demonstrated that Commerce properly applied total AFA to Saha Thai in the underlying review to address Saha Thai's evasion of the payment of AD duties and the company's failure to report a substantial volume of its U.S. sales of subject merchandise. *See* Wheatland Opening Br. at 20-23. Saha Thai engaged in an evasion scheme that caused it to intentionally withhold certain U.S. sales information from its responses to Commerce. *Id.* In its *Remand Order*, the CIT abused its

discretion when it excused Saha Thai's failure to exhaust its administrative remedies by raising its arguments related to § 1677m(d) in the agency proceeding below. *Id.* at 24-33. The CIT also erred when it compelled Commerce to comply with §1677m(d), because Saha Thai's reporting failure involved intentional misconduct. *Id.* at 33-38.

In its response brief, Saha Thai contends that Wheatland's appeal is foreclosed by *Tung Mung*, which holds that, under certain circumstances, errors in an interim order issued by the CIT do not survive Commerce's final remand redetermination. *See* Saha Thai Resp. Br. at 20-31. Saha Thai treats *Tung Mung* as a rule of appellate amnesia. As demonstrated below, it is not. *Tung Mung* applies only when the agency's remand determination rests on independent agency judgment. Here, the key legal decisions—exhaustion, the applicability of § 1677m(d), and the characterization of Saha Thai's conduct as a misunderstanding—were made by the CIT, not Commerce.

### A. The Holding in *Tung Mung* Was Always Narrow and Was Further Narrowed by Subsequent Federal Circuit Decisions

*Tung Mung* arose from an antidumping investigation into Taiwanese producers of stainless steel sheet and strip in coils. Commerce initially assigned single weighted-average cash deposit dumping rates to the respondents regardless of whether they had made sales through a middleman. *Tung Mung*, 354 F.3d at 1374. The Taiwanese producers

appealed, contending that Commerce should have used a combination rate that accounted for their sales through a middleman. *Id.* at 1375. The CIT remanded, directing Commerce to "reconsider" this issue because it had "not adequately explained its decision not to follow its prior practice of issuing combination rates." *Id.* On remand, Commerce decided to "adopt a new policy" for middleman dumping and applied a combination rate. *Id.* at 1377. The CIT affirmed Commerce's remand redetermination, and the domestic party appealed the CIT's remand order to the Federal Circuit. *Id.*

The Federal Circuit held that it could not review the CIT's remand order because "{e}ven assuming that the {CIT's} remand orders were erroneous, those errors did not survive Commerce's decisions on remand to adopt a new policy." *Id.* at 1378-1379. However, that holding was based on the narrow circumstances that existed in *Tung Mung*. First, the Federal Circuit emphasized that the CIT "did not compel Commerce to adopt a new policy" but instead simply "directed Commerce to either explain its deviation from 'prior practice' or 'apply a combination rate, consistent with its prior practice.'" *Id.* at 1379 (citations omitted). In addition, on remand, Commerce had "made clear that it did not feel compelled to change its policy" but instead "independently concluded that it was desirable to adopt a different policy, stating that it was 'doing so because the facts and its analysis in this

case indicates that such a methodology is appropriate.'" *Id.* The Federal Circuit emphasized that "{*u}nder such circumstances*, any error in the remand orders is irrelevant because Commerce's redetermination decisions represent new, independent agency interpretations." *Id.* (emphasis added).

*Nippon Steel Corp. v. U.S. Int'l Trade Comm'n*, 494 F.3d 1371 (Fed. Cir. 2007) also explored the limits of *Tung Mung*. There, the Federal Circuit declined to apply the rule in *Tung Mung* because the agency in *Nippon* was not "implementing a new agency policy, such as using a new method of calculating a duty" or "a new statutory or regulatory interpretation." *Id.* at 1377. Rather, the different result on remand was attributable to a new majority of voting commissioners that had weighed the evidence differently than the old majority. *Id.* Critically, the court warned against an overly broad reading of *Tung Mung* that would defeat the purpose of appellate review:

> We note that if we were to accept the appellee's requested approach to ignore the interim Commission and Court of International Trade decisions based on the changed outcome of the final determination, this court could not ever review interim decisions where the Commission—or other agency—reached a different outcome after remand. That result would clearly conflict with our precedent.

*Id.* at 1378; *see also Altx, Inc. v. United States*, 370 F.3d 1108 (Fed. Cir. 2004) (declining to apply *Tung Mung* on similar grounds as *Nippon*).

The Federal Circuit further limited *Tung Mung* in *Dorbest Ltd. v. United States*, 604 F.3d 1363 (Fed. Cir. 2010). There, the Court clarified that *Tung Mung* does not apply when Commerce's change on remand is merely a litigation strategy decision rather than a voluntary policy change. In *Dorbest*, Commerce had originally used seven Indian surrogate companies to calculate certain non-production factors for the Chinese respondents. *Id.* at 1367. The CIT remanded and "suggested that Commerce should have excluded the four smallest of the seven companies." *Id.* at 1369-70. On remand, Commerce excluded the four smallest companies to comply with the CIT's order. *Id.* at 1370. The domestic parties challenged the CIT's remand order on appeal. *Id.* The Federal Circuit held that the CIT had erred in remanding to Commerce to justify its calculation method or exclude the smallest surrogate companies. *Id.* at 1374. In reaching this holding, the Federal Circuit distinguished *Tung Mung* by noting that this was "not a situation in which Commerce on remand had voluntarily changed its policy." *Id.* at 1375. Rather, it was "a situation in which Commerce has simply decided as a matter of litigation strategy not to pursue the matter further." *Id.*

As the discussion above makes clear, the *Tung Mung* rule that errors in an interim remand order do not survive a subsequent agency remand redetermination applies only under narrow circumstances. Any change in a

remand redetermination cannot be explicitly compelled by the CIT but must represent real independent agency action. *Tung Mung*, 354 F.3d at 1379. This is evident where the agency has "made clear that it did not feel compelled to change its policy" but instead was "doing so because the facts and its analysis indicate{} that such a methodology is appropriate." *Id.* Moreover, the agency's new approach must constitute a genuine departure from its prior policy, methodology, or statutory interpretation—not merely a different weighing of the same evidence. *Nippon*, 494 F.3d at 1377. Finally, even when the CIT has not explicitly compelled a change in the agency's decision, any change cannot merely be an acquiescence to the CIT's remand order as a matter of litigation strategy. *Dorbest*, 604 F.3d at 1375.

### B. *Tung Mung* Does Not Apply to the CIT's Misapplication of the Exhaustion Doctrine

Turning to the instant appeal, as an initial matter, the *Tung Mung* rule does not apply to the CIT's misapplication of the exhaustion doctrine. In fact, Saha Thai's arguments related to *Tung Mung* focus exclusively on Commerce's decision to apply § 1677m(d), reopen the record to allow Saha Thai to report its sales of dual-stenciled pipe, and then recalculate Saha Thai's dumping margin using those sales. *See* Saha Thai Resp. Br. at 20-32. In its 12 pages of briefing related to *Tung Mung,* Saha Thai does not once reference the exhaustion doctrine. *See id.*

The reason is simple. Once the CIT held that the exhaustion doctrine did not apply to Saha Thai's § 1677m(d) objection, it did not remand the proceeding to Commerce to reconsider whether the exhaustion doctrine might apply. Commerce thus never made an independent policy decision as to whether Saha Thai had properly exhausted its administrative remedies with respect to its § 1677m(d) objection. It was compelled to accept the CIT's decision that Saha Thai never had an opportunity to raise its § 1677m(d) objection in the underlying review.

Indeed, it is difficult to imagine any scenario where the *Tung Mung* rule could apply to a decision by the CIT regarding the exhaustion doctrine. If it did apply, aggrieved parties could never challenge the CIT's misapplication of the exhaustion doctrine, because whenever the CIT holds that the doctrine does not apply and remands a proceeding back to the agency, the CIT's error could never be undone.

### C. *Tung Mung* Does Not Apply to Commerce's Application of § 1677m(d)

*Tung Mung* also does not apply to Commerce's decision to comply with § 1677m(d) by reopening the record and allowing Saha Thai to report its missing U.S. sales of dual-stenciled pipe. The CIT was adamant in its *Remand Order* that Commerce "***must … ensure*** that it properly complies with the notice requirement of § 1677m(d)." *Remand Order*, Appx055

(emphasis added). In fact, Commerce was twice deprived of the opportunity to decide independently whether Saha Thai engaged in intentional misconduct. First, because Saha Thai never raised its § 1677m(d) objection below, Commerce never had an opportunity in its *Final Results* to explain why § 1677m(d) did not apply. Subsequently, in the *Remand Results,* it had to accept the CIT's factual finding that Saha Thai's conduct amounted to a "misunderstanding" rather than intentional misconduct and was compelled to apply § 1677m(d) on this basis.

The Court should reject Saha Thai's suggestion that the CIT did not compel any agency action because the *Remand Order* "took no position on whether Commerce could apply AFA to Saha Thai." Saha Thai Resp. Br. at 23. This argument ignores the fact that the CIT did not allow Commerce to consider whether Saha Thai's behavior involved intentional misconduct such that it could apply the exception in *Papierfabrik*. It stated that "Commerce must … ensure that it properly complies with the notice requirement of § 1677m(d)." Appx055. Moreover, once the CIT removed the possibility of finding that Saha Thai had intentionally engaged in an evasion scheme, it removed one of the primary reasons for applying AFA.

Nor is there any merit to Saha Thai's contention that the *Remand Results* reflect "an independent exercise of agency judgment" simply because

they were not filed under protest. Saha Thai Resp. Br. at 26. The *Remand Results* make clear that Commerce was simply acquiescing to the CIT's directive as a matter of litigation strategy. *Dorbest*, 604 F.3d at 1375. Commerce dryly stated:

> Consistent with the Court's *Remand Order*, Commerce reconsidered its *Final Results* by first issuing a complete questionnaire to {Saha Thai}, instructing Saha Thai to provide a revised questionnaire response that includes all details of sales of dual-stenciled pipe, pursuant to Commerce's scope ruling and the U.S. Court of Appeals for the Federal Circuit's (Federal Circuit) decision in *Saha Thai Steel Pipe Pub. Co. v. United States*, 101 F.4th 1310 (Fed. Circ. 2024).

Appx025. Commerce mechanically implemented a result dictated by the CIT in the *Remand Order*. Moreover, unlike *Dorbest,* Commerce never stated that it did not feel compelled to change its policy and instead was "doing so because the facts and its analysis indicated that such a methodology is appropriate." *Dorbest*, 604 F.3d at 1375.

* * *

The bottom line is that *Tung Mung* does not preclude Wheatland's challenge to the CIT's *Remand Order* in this appeal.

## II. The CIT Erred by Failing to Require Saha Thai to Exhaust Its Administrative Remedies

In its opening brief, Wheatland established that the CIT abused its discretion when it did not require Saha Thai to exhaust its administrative remedies related to its § 1677m(d) objection in the agency proceedings below.

Wheatland Opening Br. at 24-33. Wheatland had argued below in its case brief that Commerce should apply total AFA based on Saha Thai's failure to report its sales of dual-stenciled pipe. *Id.* The CIT erred in concluding that Saha Thai never could object to the application of AFA based on § 1677m(d), because Saha Thai could have raised the objection in its rebuttal brief. *See id.*

In its response brief before this Court, Saha Thai contends that Wheatland's case brief did not place it on sufficient notice of the "nature of any deficiency" such that Saha Thai could have anticipated that it would have to raise an argument related to § 1677m(d). Saha Thai Resp. Br. at 41. This contention falls flat. In its case brief, Wheatland asserted that "Saha Thai has failed to report a complete U.S. sales database." Appx05689. And even a reading of the executive summary of Wheatland's case brief would have placed Saha Thai on sufficient notice of the nature of the deficiency caused by its failure to report its sales of dual-stenciled pipe:

> There is no doubt that Saha Thai knowingly participated in this evasion scheme, as sales documentation obtained by CBP in its investigation show that Saha Thai knew that the dual-stenciled pipe was being sold to its own U.S. customers – and these same U.S. customers were no longer purchasing any standard pipe from Saha Thai. By participating in this evasion scheme, Saha Thai impeded Commerce's review in numerous ways. Because a large volume of pipe was not originally reported as a Type 03 entry subject to the AD order on CWP from Thailand, Commerce's respondent selection process was distorted, Saha Thai's U.S. sales database is woefully incomplete, and there will be a gross mismatch between Commerce's dumping margin and

> assessment instructions to CBP. Faced with this set of facts, Commerce should exercise its authority, as mandated by the statute, to apply total {AFA} to Saha Thai in the final determination.

Appx05665. The nature of the deficiency was clear. Thus, Saha Thai could have argued in its rebuttal brief that, before Commerce applied AFA, it had to give Saha Thai another chance to report its sales of dual-stenciled pipe under § 1677m(d). But it never made that argument until it filed its opening brief at the CIT.

Saha Thai fails to distinguish *Boomerang* from this case. In *Boomerang,* the Federal Circuit resoundingly rejected the notion that "Commerce must expressly notify interested parties any time it intends to change its methodology between its preliminary and final determinations." 856 F.3d at 912. It also held that, after one party has requested that Commerce make a change in the agency's final determination, the opposing party is placed on notice of the potential for Commerce to make that change, and it must exhaust all counterarguments against the change in its rebuttal brief, or else those counterarguments cannot be considered by the CIT. *Id.*

Saha Thai first claims that "the precise contours of Saha Thai's argument, including a specific § 1677m(d) objection, could not have taken shape in the same way prior to the decision as it would on appeal after the decision to apply AFA had been made." Saha Thai Resp. Br. at 44. Yet Saha

Thai offers no reason as to why it had to wait until its appeal at the CIT to shape its arguments to contours that included the § 1677m(d) objection. And there are none.

Saha Thai next states that the exhaustion doctrine should not apply because "Commerce was not deprived of a meaningful opportunity to address this issue." Saha Thai Resp. Br. at 45. Nothing could be further from the truth. Commerce never mentioned § 1677m(d) in the *Final Results* because Saha Thai never raised its § 1677m(d) objection in the proceeding below. Thus, Commerce never had a chance to make an explicit finding of intentional misconduct that would justify the exception to § 1677m(d) outlined in *Papierfabrik*. It was only after Saha Thai appealed to the CIT that Commerce's attorneys explained in the agency's response brief that "the remedial provisions of 19 U.S.C. § 1677m(d) do not apply here, given Saha Thai's *intentional* failure to report its U.S. sales of dual-stenciled pipe." United States Resp. Br. (Sept. 16, 2021) (ECF 29) at 21 (emphasis added). Commerce's deprivation of a meaningful opportunity to address this issue goes to the very heart of this case. Without that opportunity, the CIT felt at liberty to be the original trier of fact and justify Saha Thai's evasive conduct as a simple "mistake or misunderstanding" that "requires notice of the deficiency and an opportunity to cure." *Remand Order,* Appx054.

There is likewise no merit to Saha Thai's claim that the exhaustion doctrine can never apply to an objection based on § 1677m(d) notice because "{t}he statute places the duty to provide notice square on the agency." Saha Thai Resp. Br. at 45. The CIT below appears to have adopted this principle. *See Remand Order*, Appx051 (invoking Commerce's statutory duty to provide notice under § 1677m(d) as a secondary basis not to apply the exhaustion doctrine). In support of this claim, Saha Thai cites the Federal Circuit's decision in *Hitachi Energy USA Inc. v. United States*, 34 F.4th 1375, 1384 (Fed. Cir. 2022), where the Court stated that "the statutory entitlement to notice and opportunity to remedy any deficiency is unqualified." As an initial matter, the *Hitachi* court subsequently issued an order limiting the sentence to state that "the statutory entitlement to notice and opportunity to remedy any deficiency is unqualified *in the circumstances of this case*." *Hitachi Energy USA Inc. v. United States*, 2022 WL 17175134, at *1 (Fed. Cir. Nov. 23, 2022) (per curiam) (emphasis added) (denying petition for panel rehearing or rehearing en banc).

More importantly, the antidumping statute imposes countless unqualified obligations on Commerce. For example, 19 U.S.C. § 1677b(a)(2) states that "{n}o pretended sale … shall be taken into account in determining normal value." That does not mean a party can wait until Commerce issues

its final determination and then argue to the CIT that a particular sale is "pretended." It must raise its arguments before the final determination. An allegation that Commerce has violated its statutory obligation to disregard pretended sales does not excuse application of the exhaustion doctrine. Indeed, a central purpose of the exhaustion doctrine is "protecting administrative agency authority and promoting judicial efficiency" by requiring parties to identify potential violations of the statute at the agency level, which allows Commerce to correct any mistakes it has made or explain how it has complied with the statute, thereby facilitating judicial review of Commerce's position. *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007) (quoting *McCarthy v. Madigan,* 503 U.S. 140, 145, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992)). Carving out exceptions to the exhaustion doctrine based on alleged violations of the statute would hollow out the doctrine until only an empty husk of it would remain.

Finally, contrary to Saha Thai's claims, the application of the exhaustion doctrine did not involve a pure question of law such that the doctrine could be excused. Saha Thai Resp. Br. at 45-46. In its response brief, Saha Thai concedes that the question of whether Commerce provided notice and an opportunity to remedy under 19 U.S.C. § 1677m(d) was not a pure question of law. *Id.; c.f.* Wheatland Opening Br. at 32 (establishing that this

question involved a determination of fact based on the record evidence). However, Saha Thai contends that the relevant question is "whether Commerce *in fact* had any duty in the first place." Saha Thai Resp. Br. at 45 (emphasis added). This question was a question of "fact," and not a question of pure law, because it depended on whether Saha Thai's failure to report its sales of dual-stenciled pipe was a simple "mistake or misunderstanding" or instead involved intentional misconduct. Saha Thai cannot turn a fact-bound dispute into a pure question of law by describing the statutory consequence at a high level of abstraction.

If Saha Thai had raised arguments related to § 1677m(d) in its rebuttal brief, Commerce could have analyzed the record evidence on its own and explained in its *Final Results* both why § 1677m(d) was inapplicable due to Saha Thai's intentional conduct and how the agency had nonetheless provided Saha Thai the notice and opportunity required by § 1677m(d). The CIT abused its discretion by allowing Saha Thai to raise these arguments for the first time on appeal without having the benefit of the agency's own reasoned determination as to § 1677m(d).

## III. On the Merits, the CIT Erred in Finding that Commerce Ran Afoul of § 1677m(d)

Wheatland demonstrated in its opening brief that, on the merits, *Papierfabrik* foreclosed the CIT's § 1677m(d) analysis in its *Remand Order*.

Wheatland Opening Br. at 33-35. The Federal Circuit held in *Papierfabrik* that Commerce is not required to treat intentionally incomplete reporting as a curable "deficiency," because that rule would allow respondents to submit incomplete data and then demand a second chance if the misconduct is discovered. *Papierfabrik*, 843 F.3d at 1376. That is exactly what happened here. The record shows that Saha Thai intentionally failed to report a substantial portion of its U.S. sales, and the CIT could not convert that finding into a questionnaire misunderstanding simply by weighing the evidence differently.

### A. The CIT Could Not Recast Intentional Withholding as a Questionnaire Misunderstanding

Saha Thai argues that *Papierfabrik* does not dictate the outcome of this case because "the Trade Court found 'no finding of fraud in this case.'" Saha Thai Resp. Br. at 38. However, whether Saha Thai committed fraud was not the CIT's finding to make in the first place. *Nippon Steel Corp. v. Int'l Trade Comm'n*, 345 F.3d 1379 (Fed. Cir. 2003) ("to the extent the Court of International Trade engaged in refinding the facts, {it} exceeded its authority"). Rather than making its own finding as to whether Saha Thai's conduct was a mistake or the result of fraud, the CIT should have remanded the case to Commerce for further proceedings on this issue. *See id.; see also Zenith Elecs. Corp. v. United States*, 99 F.3d 1576 (Fed. Cir. 1996)

("{T}he Court of International Trade sat as an appellate body. The Court of International Trade finds no facts in antidumping cases."). The CIT could not substitute its own judgment for that of Commerce. *Goodluck India Ltd. v. United States,* 11 F.4th 1335, 1344 (Fed. Cir. 2021) (holding that the court may not improperly substitute its judgment for that of Commerce with respect to a decision that a respondent has failed to cooperate to the best of its ability).

To the extent it was the province of the CIT to be the original trier of fact and make the first finding with respect to fraud, it erred in this role. In the very same month that Saha Thai faced an increase in its assigned dumping margin, October 2018, Saha Thai stopped selling single-stenciled pipe directly to its U.S. customers and instead started selling dual-stenciled pipe indirectly to its U.S. customers through Blue Pipe. Appx05669- 05675. The fact that Saha Thai attempted to cover its tracks by selling dual-stenciled pipe through an intermediary in Thailand rather than selling dual-stenciled pipe directly to its customers shows that Saha Thai's conduct was intentionally evasive from the very beginning. Thus, there is no foundation for the *Remand Order*'s factual finding that Saha Thai's failure to report its dual-stenciled pipe was a simple misunderstanding rather than intentional conduct.

Saha Thai alleges that Wheatland "frames the entire review around an alleged scheme to conceal sales" and attempts to reframe the "material facts" as being "narrower" and centered on its "original questionnaire responses." Saha Thai Resp. Br. at 4. As an initial matter, centering only on Saha Thai's questionnaire responses would fail to consider Saha Thai's conduct in participating in an evasion scheme, which was an important aspect of the problem facing Commerce. This alone would warrant a remand. *See SKF USA Inc. v. United States*, 630 F.3d 1365, 1374 (Fed. Cir. 2011) (holding that an agency explanation may be unreasonable if the agency "entirely failed to consider an important aspect of the problem") (citation and quotation omitted).

Even focusing on Saha Thai's questionnaire responses, the record shows that the company engaged in intentional misreporting and failed to cooperate to the best of its ability in crafting those responses. Saha Thai stated in a footnote in its original questionnaire response that it had not reported sales of "API 5L pipes ('Line Pipe')." Appx01040. Saha Thai's footnote does not defeat intent; it confirms the problem. The footnote told Commerce that Saha Thai had not reported "Line Pipe." It did not disclose the critical fact that the omitted sales were dual-stenciled pipe certified to standard-pipe specifications. That distinction was dispositive, because

Commerce ultimately found line pipe to be outside the order, but dual-stenciled pipe inside the order. Final Scope Ruling (June 30, 2020), Appx15639. A disclosure that obscured the exact characteristic making the product subject merchandise is not transparent reporting that fulfills Saha Thai's duty to cooperate to the best of its ability.

### B. Saha Thai Has Failed to Distinguish *Papierfabrik*

Amazingly, and without even a speck of a sense of irony, Saha Thai claims that the critical distinction between this case and *Papierfabrik* is that, "unlike *Papierfabrik*, Saha Thai has never admitted to any fraud." Saha Thai Resp. Br. at 55. That Saha Thai has not confessed to fraud or intentional misconduct does not change the fact that it committed fraud in a manner very similar to the respondent in *Papierfabrik*. Here, like the respondent in *Papierfabrik*, Saha Thai engaged in an intentional scheme to withhold information regarding certain sales, an omission that impeded Commerce's antidumping inquiry. 843 F.3d at 1379. After Saha Thai's misconduct came to light, the language of § 1677m(d) did not allow Saha Thai to "demand an opportunity to remedy {its} intentionally deficient data and avoid the otherwise-authorized adverse inferences." *Id.* at 1383-84. *Papierfabrik* would mean very little if a respondent could avoid it simply by refusing to confess.

Significantly, while it has never confessed to wrongdoing, Saha Thai has also never explained why its behavior was based on commercial

considerations or otherwise motivated by reasons other than evasion. And there are none. Saha Thai meekly claims that it "initially understood dual-stenciled pipe was not covered by the AD Order," which was a "good-faith position on the proper scope." Saha Thai Resp. Br. at 57 & 71. If that were true, then Saha Thai would not have needed to cover its tracks by selling dual-stenciled pipe indirectly through Blue Pipe instead of directly to its customers. Here, Saha Thai's cover-up is its confession.

### C. *Hitachi Energy* and *Shelter Forest* Are Not on Point

Contrary to Saha Thai's contentions, the Federal Circuit's decisions in *Hitachi Energy USA Inc. v. United States*, 34 F.4th 1375 (Fed. Cir. 2022) and *Shelter Forest Int'l Acquisition, Inc. v. United States,* No. 2021-2281, 2022 WL 2155965 (Fed. Cir. June 15, 2022) are not more directly on point than *Papierfabrik*. In fact, neither decision is relevant to this case.

First, *Hitachi* involved a change in Commerce's methodology for reporting service-related revenue in the gross unit price, not allegations of intentional misconduct. 34 F.4th at 1384. Second, in *Hitachi*, the respondent requested permission to provide additional information to cure the deficiency. *Id.* Saha Thai did the opposite. It omitted a substantial volume of sales, failed to request permission to supplement its U.S. sales database, and waited until litigation to invoke § 1677m(d). *Hitachi* protects respondents from being sandbagged by a changed methodology. It does not protect respondents that

withhold sales data and then demand a cure after Commerce discovers the omission.

*Shelter Forest* is also distinguishable because it did not involve any allegations of intentional misconduct. 2022 WL 2155965, at *6 (Fed. Cir. June 15, 2022) ("the Coalition does not allege that Shelter Forest submitted fraudulent information to Commerce"). Indeed, the Federal Circuit explicitly distinguished *Shelter Forest* from *Papierfabrik* on this basis. *Id.*

**D. Commerce Did Comply with § 1677m(d)**

Wheatland established in its opening brief that, assuming the requirements of § 1677m(d) applied, Commerce satisfied those requirements by issuing a supplemental questionnaire that gave Saha Thai a chance to explain its deficiency in light of the allegations Wheatland had made regarding sales of dual-stenciled pipe. *See* Wheatland Opening Br. at 38-40. Saha Thai's arguments to the contrary miss the mark. *See* Saha Thai Resp. Br. at 63-65. Section 1677m(d) does not require Commerce to use talismanic words such as "deficiency" or "intentional misconduct." Commerce's second supplemental questionnaire put the relevant issue directly before Saha Thai by asking about the sales channel, customers, and dual-stenciled pipe transactions that Wheatland had identified. *See* Saha Thai's Second SQR (Mar. 23, 2020), Appx04815-04819. Saha Thai therefore had the very opportunity the statute contemplates – *i.e.*, to explain why it had omitted

sales and why that omission did not reflect non-cooperation. Its response confirmed the omission rather than dispelled it.

## IV. Further Remand of This Case Is Not Precluded

The Court should reject Saha Thai's argument that "any further remand is precluded here because the record is now complete as to Saha Thai's sales of dual-stenciled pipe." Saha Thai Resp. Br. at 3. The record became "complete" only because the CIT held that Saha Thai was entitled to another opportunity to submit information it had omitted from its original questionnaire response. The Federal Circuit can reverse the CIT's error and reinstate Commerce's original application of AFA. *See, e.g. Essar Steel Ltd. v. United States*, 678 F.3d 1268 (Fed. Cir. 2012) (where Commerce applied AFA to a respondent and the CIT remanded the case, directing Commerce to reopen the record, the Federal Circuit reversed the CIT's decision and restored Commerce's original AFA determination); *Linyi Chengen Imp. & Exp. Co. v. United States*, 174 F.4th 1351 (Fed. Cir. 2026) (same). A respondent cannot manufacture cooperation retroactively by supplying on remand the very sales data it withheld during the review.

In addition, even though the record has been "completed" with sales information from Saha Thai, there still exists a statutory predicate for applying facts available. Saha Thai misreads the statute when it states that "Commerce's use of facts available is explicitly conditioned" on there being

"necessary information missing from the record." Saha Thai Resp. Br. at 35-36. The statute provides that Commerce may use facts otherwise available either where "necessary information is not available on the record" ***or***, among other circumstances, an interested party "significantly impedes a proceeding." 19 U.S.C. § 1677e(a). Here, Saha Thai impeded Commerce's review by engaging in an evasion scheme, warranting the application of facts available.

## V. Commerce's *Remand Results* Are Also Unsupported by Substantial Evidence

Saha Thai next asserts that there can be no "argument that Commerce's most recent *Remand Results* are not independently supported by substantial evidence or not in accordance with law." Saha Thai Resp. Br. at 30. Nothing could be further from the truth. Commerce's Remand Results fail to address Saha Thai's egregious intentional misconduct during the period of review or the way it impeded the review with its questionnaire responses. Commerce overlooked Saha Thai's intentional conduct, giving it a second chance to report the missing sales of dual-stenciled pipe that it intentionally sought to hide from Commerce, first through its evasion scheme and then by misleadingly describing the sales as involving "line pipe" instead of dual-stenciled pipe. Rather than applying AFA to induce cooperation from Saha Thai and other respondents, Commerce sent the message that intentional

misconduct will be rewarded. This is precisely the outcome that *Papierfabrik* sought to avoid.

Saha Thai is wrong that the intervening decisions in *Saha Thai Steel Pipe Pub. Co. Ltd. v. United States*, 101 F.4th 1310, 1314 (Fed. Cir. 2024) and *Blue Pipe Steel Ctr. Co. v. United States*, No. 21-00081, 2025 WL 2731541 (Ct. Int'l Trade Sept. 25, 2025) are irrelevant unless they contain the words "fraud finding." Saha Thai Resp. Br. at 17. Those decisions eliminate the premise that allowed the CIT to recharacterize Saha Thai's omission as a scope misunderstanding. The Federal Circuit confirmed that dual-stenciled pipe was covered by the Order, and *Blue Pipe* confirmed that sales of dual-stenciled pipe by Saha Thai through Blue Pipe had been used to evade duties. Those decisions at minimum confirm that Commerce could reasonably view Saha Thai's omission as intentional non-cooperation rather than a curable questionnaire mistake. Commerce's failure to take account of these developments renders the *Remand Results* unsupported by substantial evidence and not in accordance with law.

*   *   *

## VI. Conclusion

For the foregoing reasons, Wheatland respectfully requests that this Court reverse the CIT's judgment upholding Commerce's *Remand Results* and uphold Commerce's original *Final Results* as supported by substantial evidence and in accordance with law.

Respectfully submitted,

/s/ Luke A. Meisner
Roger B. Schagrin
Luke A. Meisner
SCHAGRIN ASSOCIATES
900 7th St. NW Suite 500
Washington, DC 20001
(202) 223-1700

*Counsel for Wheatland Tube Company*

Date: August 3, 2026

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 26-1566

**Short Case Caption:** Saha Thai Steel Pipe Public Company Limited v. US

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 6,191 words.

☐ the filing has been prepared using a monospaced typeface and includes ______ lines of text.

☐ the filing contains ______ pages / ______ words / ______ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ______).

Date: 08/03/2026

Signature: /s/ Luke A. Meisner

Name: Luke A. Meisner

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

**Case Number** 26-1566

**Short Case Caption** Saha Thai Steel Pipe Public Company Limited v. US

**NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system. See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e). Attach additional pages as needed.

I certify that I served a copy of the foregoing filing on 08/03/2026

by ☐ U.S. Mail ☐ Hand Delivery ☐ Email ☐ Facsimile
☑ Other: FTP (File Transfer Protocol)

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Daniel L. Porter, Esq. | daniel.porter@pillsburylaw.com |
| James P. Durling, Esq. | james.durling@pillsburylaw.com |
| | |
| | |
| | |

☐ Additional pages attached.

Date: 08/03/2026

Signature: /s/ Luke A. Meisner

Name: Luke A. Meisner